UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ROBERT CORBETT,

                    Plaintiff,                          Case No. 2:25-cv-122

v.                                                      Honorable Maarten Vermaat

UNKNOWN LEACH et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Velmer and Bolton.

The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: official capacity claims, First Amendment free exercise claims, Fourth, Fifth, Eighth, and Fourteenth Amendment claims, claims related to the handling of Plaintiff's grievances, First Amendment retaliation claims against Defendant Leach concerning the 2023 notices of intent, First Amendment retaliation claims concerning Plaintiff's placement on J-Pay and phone restrictions, denial of communications with his family, and prohibition from ordering another tablet, and all First Amendment retaliation claims against Defendant Schroeder premised upon supervisory liability.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

The following First Amendment retaliation claims against Defendants Leach, Schroeder, and Doe remain in the case: claims against Defendant Leach related to the denial of a job assignment in November 2024, and the removal of, misconduct charges regarding, and destruction of Plaintiff's first tablet; claims against Defendant Doe related to the removal of Plaintiff's first tablet and threat to write a "fake threatening behavior misconduct" against Plaintiff; and claim against Defendant Schroeder concerning additional threats of misconduct and placement in segregation.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP staff in their individual and official capacities: Inspector **Unknown Leach**, Warden **Sarah Schroeder**, Property Room Correctional Officer **Unknown Velmer**, Grievance Coordinator **Unknown Bolton**, and Correctional Officer Unknown Party named as **"John Doe."** (Compl., ECF No. 1–2.)

Plaintiff alleges that he previously "complain[ed] about his religious beliefs and threaten[ed] to file grievances about his "Native American service callouts." (*Id.*, PageID.2.) Thereafter, in 2023, Defendant Leach wrote Plaintiff two false notice of intents. (*Id.*) Plaintiff was found not guilty. (*Id.*) However, Plaintiff claims that this stated a "chain of retaliatory and harassing behaviors" from Defendant Leach and unidentified others. (*Id.*, PageID.3.)

On or about November 1, 2024, Defendant Leach told Plaintiff that he would make sure that Plaintiff never got a job again. (*Id.*) When Plaintiff asked why, Defendant Leach stated, "You think you[']re a big shot cause staff vouching for you to work. And you won[']t stop complaining about your Native American service callouts." (*Id.*) Defendant Leach also told Plaintiff that if

Plaintiff did not stop complaining, He would "set [Plaintiff] up on a ticket and put [Plaintiff] in the hole (segregation)!" (*Id.*)

On November 21, 2024, Plaintiff sent a kite to non-party Housing Unit ARUS Kessler asking why Kessler was denying Plaintiff the opportunity to work. (*Id.*) ARUS Kessler responded, "Inspector shot you down!" (*Id.*, PageID.4.)

On December 10, 2024, shortly after Plaintiff sent a kite concerning his "Native American service callouts," Plaintiff was called out for a blood spill cleanup. (*Id.*) When Plaintiff came out of his cell, he first took his tablet to the officers' desk to download his music, family pictures, and games. (*Id.*) Non-party Sergeant Tikkanen told Plaintiff that he could download his items after he cleaned the blood spill and to leave the tablet at the desk. (*Id.*)

When Plaintiff returned to the desk, he noticed that his tablet was not there. (*Id.*) Defendant Doe explained that Defendant Leach told Defendant Doe that Plaintiff was "on the radar," meaning that staff were to issue Plaintiff false misconduct charges. (*Id.*) When Plaintiff stated, "I do not know what Inspector Leach issue is with me! [sic]," Defendant Doe told Plaintiff, "Lock down before I wrote a false threatening behavior misconduct, we already have your tablet." (*Id.*) Plaintiff returned to his cell. (*Id.*) That evening, non-party "correctional officers" came to Plaintiff's cell and told him that "he was going to segregation for his tablet being jailbroken," meaning that it contained prohibited programs. (*Id.*) Defendant Leach had issued Plaintiff a misconduct for a "jailbroken" tablet, charging Plaintiff with a class I misconduct of possession of dangerous contraband. (ECF No. 1-3, PageID.16); Plaintiff explained that the tablet contained these programs by default from the factory; however, Plaintiff was found guilty of the misconduct charge(s) related to his tablet without [a] proper investigation." (ECF No. 1, PageID.5.)

Following the guilty finding, Plaintiff attended a meeting with Defendant Schroeder. (*Id.*) At that time, Defendant Schroeder told Plaintiff that he would need to apologize to Defendant Leach and stop submitting kites and grievances or he would continue receiving misconduct charges for which he would be found guilty, resulting in segregation. (*Id.*)

Plaintiff remained in segregation for 35 days as a result of the false misconduct charge(s) related to his tablet. (*Id.*, PageID.6.) After being released from segregation, Plaintiff was denied religious services and a job assignment. (*Id.*)

Plaintiff filed multiple kites and grievances concerning his tablet, explaining that Defendant Leach was retaliating against him. (*Id.*) Plaintiff was then placed on J-Pay and phone restrictions, denied communications with his family, and prohibited from ordering another tablet. (*Id.*)

Eventually, the restriction preventing Plaintiff from ordering another tablet was lifted and Plaintiff ordered a tablet, which arrived on March 28, 2025. (*Id.*) When Plaintiff received the tablet, he had a non-party Officer document that the tablet contained the prohibited programs at the time that he received it. (*Id.*) Plaintiff submitted this information to Defendant Schroeder and others in an attempt to have his December 2024 misconduct overturned; however, Plaintiff's efforts were denied. (*Id.*, PageID.7.)

Plaintiff also submitted multiple grievances concerning the events described in his complaint; however, Defendant Bolton denied Plaintiff's grievances and Defendant Schroeder denied Plaintiff's appeals. (*Id.*, PageID.7–8.) Plaintiff alleges that Defendants' denials of Plaintiff's grievances were incorrect. (*Id.*, PageID.8.)

At some point, Defendant Leach destroyed Plaintiff's first tablet. (*Id.*, PageID.9.) When asked why he destroyed the tablet, Defendant Leach told Plaintiff that he had to "cover up [his] tracks." (*Id.*)

Finally, Plaintiff alleges that he has been deprived of "his right to practice and exercise his religious beliefs." (*Id.*, PageID.10.)

Plaintiff states that he intends to bring claims for violation of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (*Id.*) He seeks declaratory, injunctive, and monetary relief. (*Id.*, PageID.10–11.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments, such as the MDOC, are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Accordingly, the State of Michigan enjoys sovereign immunity from liability under § 1983.

In *Will*, the Supreme Court concluded not only that a State was immune from § 1983 liability as a sovereign, but also that "a State is not a person within the meaning of 1983." *Will*, 491 U.S. at 64. Those concepts are related, but distinct. The Supreme Court explained:

> This does not mean . . . that we think that the scope of the Eleventh Amendment and the scope of § 1983 are not separate issues. Certainly they are. But in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it.

*See Will*, 491 U.S. at 66–67 (footnote omitted). The Supreme Court determined that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id*. at 66. But that determination did not depend in any way on Eleventh Amendment immunity.

The *Will* case did not come to the Supreme Court by way of the lower federal courts, rather, it was filed in the Michigan Court of Claims and then appealed to the Michigan Court of Appeals and the Michigan Supreme Court. *Id*. at 61. The Court's holding, therefore, depends entirely on interpretation of § 1983 "since the Eleventh Amendment does not apply in state courts." *Id*. at 63–64 (citation omitted).

Petitioner Will attempted to avoid the Supreme Court's holding with regard to a State's liability by noting that he had sued a state official in his official capacity and that state officials are "persons" even though they are acting in the official capacity. The Supreme Court rejected that attempt as well:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985); *Monell, supra*, at 690, n. 55. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.

*Id.* at 71 (parallel citations and footnote omitted). Accordingly, Plaintiff fails to state a claim for monetary damages against Defendants in their official capacities upon which relief may be granted.

Plaintiff also seeks declaratory and injunctive relief. (Compl., ECF No. 1, PageID.10.) Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff's complaint does not allege an ongoing violation of federal law. Instead, Plaintiff seeks relief for past harm that occurred in late 2024 and asks that the Court prevent possible future misconduct (Compl., ECF No. 1, PageID.10). However, past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief);

10

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). Accordingly, Plaintiff fails to state a claim against Defendants in their official capacities for injunctive and declaratory relief as well. The Court will therefore dismiss Plaintiff's official capacity claims.

### B.    Claims Against Defendant Velmer

Plaintiff names Defendant Velmer in his list of parties, but he presents no factual allegations against this Defendant in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not present any factual allegations against Defendant Velmer. The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Plaintiff's claims against Defendant Velmer fall far short of the minimal pleading standards under Rule 8 of the Federal

11

Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### C.     Defendant Bolton

Plaintiff's sole allegation against Defendant Bolton is that Defendant Bolton denied Plaintiff's grievances. However, the Sixth Circuit has held that, where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Therefore, the Court will dismiss Plaintiff's complaint against Defendant Bolton.

### D.     First Amendment Retaliation Claims

Plaintiff claims that "[t]his all stemmed from Mr. Corbett trying to attend service callouts for his Native American beliefs." (Compl., ECF No. 1, PageID.9.) He repeatedly asserts that the actions described within the complaint were retaliatory. (*See id.*, generally.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, the Court will assume for screening proposes that Plaintiff engaged in protected conduct by submitting written grievances, by orally voicing his concerns and complaints, and by attempting to engage in religious practices. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Moreover, the Court finds that Plaintiff has identified the following adverse actions: (1) in 2023, Defendant Leach issued Plaintiff two false notices of intent (Compl., ECF No. 1, PageID.2); (2) prior to November 21, 2024, Plaintiff was denied an opportunity to work (*id.*, PageID.3); (3) on December 10, 2024, Defendant Doe, on the order of Defendant Leach, took Plaintiff's tablet (*id.*, PageID.4); (4) on December 10, 2024, Defendant Doe, told Plaintiff that he would write a "fake threatening behavior misconduct" against Plaintiff; (5) on December 10, 2024, Defendant Leach issued Plaintiff a misconduct for a "jailbroken" tablet, resulting in Plaintiff being confined to segregation (*id.*; ECF No. 1-3, PageID.16); (6) Defendant Schroeder told Plaintiff that, if he did not stop writing kites and grievances concerning "his Native American service issues," he would continue to receive "these types of misconducts," be "found guilty every time[,] and be placed in segregation" (ECF No. 1, PageID.5); (7) Plaintiff was placed on J-Pay and phone restrictions, denied communications with his family, and prohibited from ordering another tablet (*id.*, PageID.6); and (8) Defendant Leach destroyed Plaintiff's tablet (*id.*, PageID.9). The critical question, however, is whether the adverse actions were prompted by a retaliatory motive. .

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506

(C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted). Therefore, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff's first claims that, in 2023, Defendant Leach issued Plaintiff two false notices of intent because of Plaintiff's protected activity. (Compl., ECF No. 1, PageID.2.) Yet, Plaintiff fails to provide the Court with any well-pleaded factual allegations that would support this conclusory allegation. Plaintiff does not describe when he engaged in protected activity, why he believes that Defendant Leach was aware of his activity, or any facts that would suggest that the notices of intent were motivated by Plaintiff's protected conduct. Therefore, the Court will dismiss Plaintiff's retaliation claims premised upon the 2023 notices of intent.

The same is true of Plaintiff's claims that Plaintiff was then placed on J-Pay and phone restrictions, denied communications with his family, and prohibited from ordering another tablet after Plaintiff filed multiple kites and grievances concerning his tablet. (ECF No. 1, PageID.6.) Plaintiff does not identify the individual(s) responsible for taking these actions against him, let alone provide facts that would plausibly suggest that any individual was aware of Plaintiff's kites

14

and grievances, or bore any retaliatory animus toward Plaintiff. Therefore, any claims premised upon these actions will likewise be dismissed.

However, where Plaintiff does provide the Court with factual allegations, the Court must accept those allegations as true at this stage of the proceedings. Therefore, the Court will allow Plaintiff to proceed with the following retaliation claims: claims against Defendant Leach related to the denial of a job assignment in November 2024, and the removal of, misconduct charges regarding, and destruction of Plaintiff's first tablet; claims against Defendant Doe related to the removal of Plaintiff's first tablet and threat to write a "fake threatening behavior misconduct" against Plaintiff; and claim against Defendant Schroeder concerning additional threats of misconduct and placement in segregation.

To the extent that Plaintiff seeks to hold Defendant Schroeder liable for the entirety of Plaintiff's retaliation claims because of her supervisory position, Plaintiff's claims would fail. Government officials, such as Defendant Schroeder, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Schroeder encouraged or condoned the conduct of her subordinates, or authorized, approved or knowingly acquiesced in the conduct prior to Defendant Schroeder's meeting with Plaintiff such that it could be said that she was the moving force behind any violation of Plaintiff's constitutional rights by Defendants Leach and Doe. Accordingly, Plaintiff's claim for retaliation against Defendant Schroeder remains confined to her threats that Plaintiff would receive misconducts and be placed in segregation if he continued writing kites and grievances regarding "his Native American service issues" (ECF No. 1, PageID.5).

### E.    First Amendment Free Exercise Claims

Plaintiff refers to complaints regarding his "Native American service callouts" and alleges that he has been deprived of "his right to practice and exercise his religious beliefs." (Compl., ECF

No. 1, PageID.10.) The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff's First Amendment free exercise claim is entirely conclusory. Plaintiff does not describe the basis for his complaints regarding his "Native American service callouts" or allege facts that would plausibly suggest that Defendants actions deprived Plaintiff of the "reasonable opportunity" to exercise a sincerely held religious belief. Plaintiff fails to allege the nature of his religious beliefs or to specify how Defendants' actions infringed on his ability to exercise those beliefs. As noted previously by the Court, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at

678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's First Amendment free exercise claims are properly dismissed.

### F.    Fourth Amendment Claims

Plaintiff also alleges that Defendants violated Plaintiff's "right to have his property secured under the . . . Fourth . . . Amendment." (Compl., ECF No. 1, PageID.10.) However, the Fourth Amendment does not apply to the seizure of property in prison. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984). In examining a Fourth Amendment claim arising out of an allegedly retaliatory search and seizure of property from a prisoner's cell, the *Hudson* Court concluded that prisoners have no legitimate expectation of privacy in prison and, therefore, "the Fourth Amendment's prohibition against unreasonable searches does not apply in prison cells." *Id.* The Court further reasoned:

> Assuming that the Fourth Amendment protects against the destruction of property, in addition to its mere seizure, the same reasons that lead us to conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable in a prison cell, apply with controlling force to seizures. Prison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests.

> That the Fourth Amendment does not protect against seizures in a prison cell does not mean that an inmate's property can be destroyed with impunity. We note, for example, that even apart from inmate grievance procedures, see n. 9, infra, respondent has adequate state remedies for the alleged destruction of his property.

*Id.* at 528 n.8.

Therefore, in keeping with *Hudson*, Plaintiff may not maintain a Fourth Amendment claim premised upon the seizure and destruction of Plaintiff's tablet. Any such claim will be dismissed.

### G.    Fifth Amendment Claims

Plaintiff also alleges that Defendants violated Plaintiff's "right to have his property secured under the . . . Fifth . . . Amendment." (Compl., ECF No. 1, PageID.10.) However, nothing in Plaintiff's complaint suggests a violation of Plaintiff's Fifth Amendment rights. The Fifth

18

Amendment's Due Process Clause applies only to claims against federal employees. Here, Plaintiff has sued only state officials. Plaintiff, therefore, cannot maintain a Fifth Amendment due process claim. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government"). The Court will dismiss Plaintiff's Fifth Amendment claims for failure to state a claim.

### H.    Eighth Amendment Claims

Plaintiff further claims that Defendants violated Plaintiff's "right to have his property secured under the . . . Eighth . . . Amendment." (Compl., ECF No. 1, PageID.10.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). While Plaintiff's tablet may make his life in prison more pleasant, it is certainly not one of "the minimal civilized measure of life's necessities," *Rhodes*, 452 U.S. at 347, nor does the lack of a tablet expose Plaintiff to a serious risk to his health or safety. Accordingly, Plaintiff cannot state an Eighth Amendment claim regarding the deprivation of his property.

## I.    Fourteenth Amendment Procedural Due Process Claims – False Misconduct Charges

Plaintiff alleges that Defendant Leach wrote Plaintiff two false "notice of intents," for which Plaintiff was found not guilty. (Compl., ECF No. 1, PageID.2–3.) Plaintiff also claims that, as a result of the misconduct charge concerning Plaintiff's tablet, Plaintiff remained in segregation for 35 days. (*Id.*, PageID.6.) Plaintiff asserts that these actions violated his right to due process. (*Id.*, PageID.10.)

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Nonetheless, Prisoners retain a liberty interest with respect to state-

imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The allegations of Plaintiff's complaint do not plausibly suggest that Plaintiff's misconduct charge could have affected any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.

As to the misconduct charge for which Plaintiff was found not guilty, there is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed"). Plaintiff may not bring a due process claim if he was ultimately found not guilty of the falsified notices of intent.

As to the charges related to Plaintiff's tablet, Plaintiff has not identified any interests protected by the due process clause under *Sandin*. First, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an

21

indeterminate sentence for an offense committed after 2000,[2] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

Second, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff alleges that he was placed in segregation for 35 days as a result of the "false misconduct." (Compl., ECF No. 1, PageID.6.) However, confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See, e.g., Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for

---

[2] Plaintiff is incarcerated for an offense committed on March 21, 2013. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=829712 (last visited July 29, 2025).

the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest). Therefore, Plaintiff's claim that he was in segregation for 35 days does not implicate a protected liberty interest and Plaintiff fails to state a Fourteenth Amendment procedural due process claim related to the allegedly false misconduct.

> **J.     Fourteenth Amendment Procedural Due Process Claims – Work Assignment**

Plaintiff may have also intended to raise a due process claim concerning the denial of an opportunity to work. However, he has failed to state such a claim. "[N]o prisoner has a constitutional right to a particular job or to any job." *See Ivey*, 832 F.2d at 955; *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment); Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *See Carter v. Tucker*, 69 F. App'x 678, 80 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, the denial of a job opportunity did not trigger a right to due process, any such Fourteenth Amendment due process claims will be dismissed.

**K.      Fourteenth Amendment Procedural Due Process Claims – Deprivation of Property**

Plaintiff alleges that Defendant Leach destroyed Plaintiff's tablet. (Compl., ECF No. 1, PageID.9.) The Court will liberally construe this allegation as raising a Fourteenth Amendment procedural due process claim for the deprivation of Plaintiff's property.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). However, any Fourteenth Amendment claim based upon the deprivation of Plaintiff's property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id*. at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id*. at 543, has "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id*., where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id*., and the state "remedies provided could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to satisfy the requirements of due process," *id*. at 544. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

24

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Indeed, Plaintiff has state post-deprivation remedies available to him. For example, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state Fourteenth Amendment due process claims regarding the deprivation of his property.

### L.    Claims Related to the Handling of Plaintiffs' Grievances and Complaints

Plaintiff also claims that Defendants failed to adequately handle and respond to his grievances and requests. However, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt*, 459 U.S. at 467; *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue*, 80 F. App'x at 430; *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the administrative grievance process, Defendants' conduct did not deprive Plaintiff of due process.

To the extent alleged, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances or their failure to respond to Plaintiff's

requests. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff fails to state any claim against Defendants based on their handling of Plaintiff's grievances and requests.

### <u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Having conducted the review required by the PLRA, the Court determines that Defendants Velmer and Bolton will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Leach, Schroeder, and Doe: official capacity claims, First Amendment free exercise claims, Fourth, Fifth, Eighth, and Fourteenth Amendment claims, claims related to the handling of Plaintiff's grievances, First Amendment retaliation claims against Defendant Leach concerning the 2023 notices of intent, First Amendment retaliation claims concerning Plaintiff's placement on J-Pay and phone restrictions, denial of communications with his family, and prohibition from ordering another tablet, and all First Amendment retaliation claims against Defendant Schroeder premised upon supervisory liability.

The following First Amendment retaliation claims against Defendants Leach, Schroeder, and Doe remain in the case: claims against Defendant Leach related to the denial of a job assignment in November 2024, and the removal of, misconduct charges regarding, and destruction of Plaintiff's first tablet; claims against Defendant Doe related to the removal of Plaintiff's first tablet and threat to write a "fake threatening behavior misconduct" against Plaintiff; and claim against Defendant Schroeder concerning additional threats of misconduct and placement in segregation

An order consistent with this opinion will be entered.

Dated:    August 18, 2025                          /s/ *Maarten Vermaat*
                                                    Maarten Vermaat
                                                    United States Magistrate Judge